UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,

   v.                             File No. 1:13-CR-109

AHMED SHERIF GREEN,

       Defendant.
_____/


Change of Plea Hearing

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
September 6, 2013


APPEARANCES


MARK V. COURTADE           JOHN M. KARAFA
Assistant U.S. Attorney    1440 Peck St.
P.O. Box 208              P.O. Box 27
Grand Rapids, MI 49501     Muskegon, MI 49443
Attorney for Plaintiff     Attorney for Defendant


Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                    Grand Rapids, Michigan
 2                                    September 6, 2013
 3                                    1:17 p.m.
 4                     -     -     -
 5
 6                  P R O C E E D I N G S
 7
 8          THE COURT:  You may be seated.  Good afternoon.
 9          MR. COURTADE:  Good afternoon.
10          THE COURT:  This is the matter of United States v.
11   Ahmed Sherif Green.  This is the Court's docket 1:13-CR-109,
12   Mr. Courtade representing the United States Attorney's Office,
13   Mr. Karafa by court appointment representing Mr. Green.
14          The Court has been handed a while ago here what is
15   labeled a plea agreement, and this is a nine-page document
16   which indicates in this matter that there is an agreement
17   reached for Mr. Green to enter guilty pleas to this indictment
18   by pleading guilty to Counts 1, 3, 4 and 5 of the indictment
19   in this matter.  Mr. Courtade, you have signed this
20   agreement.  Mr. Karafa, is this your signature?
21          MR. KARAFA:  Yes, Your Honor.
22          THE COURT:  Mr. Green, is this your signature in the
23   middle of this last page?
24          DEFENDANT GREEN:  Yes, sir.
25          THE COURT:  And above your signature it says that
```

1   you've carefully reviewed and discussed every part of this

2   plea agreement with your attorney.  Is that right?

3               DEFENDANT GREEN:  Yes, sir.

4               THE COURT:  And it says that you understand this

5   agreement and you voluntarily agree to its terms.  Is that

6   right?

7               DEFENDANT GREEN:  Yes.  Yes, sir.

8               THE COURT:  It says your attorney has advised you of

9   your rights, possible defenses to the sentence guideline

10  provisions, and the consequences of entering into this

11  agreement.  Is that right?

12              DEFENDANT GREEN:  Yes, sir.

13              THE COURT:  Have any other inducements been made or

14  any other promises to you been made other than those in this

15  agreement?

16              DEFENDANT GREEN:  No, sir.

17              THE COURT:  Has anyone threatened you or forced you

18  in any way to enter into this agreement?

19              DEFENDANT GREEN:  No, sir.

20              THE COURT:  Are you satisfied with the

21  representation provided here in this matter to you by Mr.

22  Karafa?

23              DEFENDANT GREEN:  Yes, sir.

24              THE COURT:  Okay.  If you could come to the podium,

25  please, counsel.  If you would raise your right hand, please.

1    (Defendant Green was sworn by the Court.)

2           THE COURT:  Do you understand the importance of

3    truthfulness to these proceedings and the penalty of perjury

4    if you should make a false statement?

5           DEFENDANT GREEN:  Yes, Your Honor.

6           THE COURT:  Are you under the care of a physician or

7    are there any medications or any mental or physical conditions

8    that would affect your ability to understand and participate

9    in these proceedings?

10          DEFENDANT GREEN:  No, sir.

11          THE COURT:  Have you had an adequate opportunity to

12   thoroughly discuss these charges and the plea that you might

13   enter with Mr. Karafa before coming here into the courtroom?

14          DEFENDANT GREEN:  Yes, sir.

15          THE COURT:  Do you understand that you have a right

16   to be represented by counsel throughout any proceedings in

17   this matter?

18          DEFENDANT GREEN:  Yes, sir.

19          THE COURT:  Would you please read or summarize these

20   matters for purposes of this proceeding into the record, and

21   specifically I believe Counts 1, 3, 4 and 5 of the indictment,

22   Mr. Courtade?

23          MR. COURTADE:  Yes, Your Honor, I will.

24          Count 1 charges a conspiracy to distribute heroin

25   and alleges that it began in September of 2011 and continued

1    through February 27th of 2013 in Kent County and alleges that

2    the defendant conspired with Paris Wells, Markita Choice, and

3    other persons known and unknown to the grand jury to

4    distribute one kilogram or more of a mixture or substance

5    containing heroin.  Would the Court like to me to state the

6    penalties at the same time?

7              THE COURT:  I'll take care of that.

8              MR. COURTADE:  Thank you.  That is a conspiracy to

9    distribute a kilogram or more of heroin.

10             Count 3 charges that the defendant on February 12th,

11   2013, in Kent County, knowingly, intentionally and unlawfully

12   possessed with intent to distribute at least 100 grams or more

13   of a substance containing heroin.

14             Counts 4 and 5 both charge felon in possession of a

15   firearm as an armed career criminal.  Count 4 charges that on

16   February 12, 2013, in Kent County, the defendant, having been

17   convicted of at least three serious drug offenses punishable

18   by imprisonment for a term exceeding one year under the laws

19   of the state of Michigan, knowingly possessed at least one

20   firearm in and affecting commerce, and we've identified those

21   as an H & R .22 caliber pistol and a Colt .22 caliber pistol.

22             Count 5 again charges the same type of offense, a

23   felon in possession of a firearm as an armed career criminal,

24   but this time charges that on or about May 29, 2013, in Kent

25   County, the defendant, Ahmed Sherif Green, having been

1    convicted of those same three serious drug offenses punishable

2    by a term exceeding one year under the laws of the state of

3    Michigan, knowingly possessed at least one firearm in and

4    affecting commerce, and we've identified that as a Colt 32-20

5    caliber revolver.

6                THE COURT:  What pleas would you wish to enter to

7    these charges pursuant to this agreement that have just been

8    read by Mr. Courtade, Mr. Green?

9                DEFENDANT GREEN:  Guilty, Your Honor.

10                THE COURT:  Do you understand that by pleading

11    guilty you would be giving up the right to a trial or waiving

12    the right to a trial before a judge or a jury here in this

13    courtroom?

14                DEFENDANT GREEN:  Yes, sir.

15                THE COURT:  Do you understand that you would be

16    giving up the right to be presumed innocent and giving up the

17    right to require the government to go forward in an effort to

18    prove you guilty beyond a reasonable doubt?

19                DEFENDANT GREEN:  Yes, sir.

20                THE COURT:  Do you understand that you would be

21    giving up the right to cross-examine the witnesses that the

22    government might call, to subpoena and call witnesses on your

23    own behalf and present evidence on your own behalf at a

24    trial?

25                DEFENDANT GREEN:  Yes, sir.

1          THE COURT:  Including your right to testify or not

2   testify.  Do you understand that?

3          DEFENDANT GREEN:  Yes, sir.

4          THE COURT:  Do you understand that no one could call

5   you as a witness against yourself?

6          DEFENDANT GREEN:  Yes, sir.

7          THE COURT:  Do you understand very importantly that

8   these guilty pleas pursuant to this agreement if accepted by

9   this Court means that you are forever giving up your right to

10  a trial?

11         DEFENDANT GREEN:  Yes, sir.

12         THE COURT:  And the guilty plea if accepted by this

13  Court would result in your conviction and by an eventual

14  sentence imposed by this Court?

15         DEFENDANT GREEN:  Yes, sir.

16         THE COURT:  Do you understand that the primary first

17  charge in this matter is a charge here of conspiring with

18  others from the spring of '11 through February of this year in

19  Kent County to knowingly, intentionally and unlawfully combine

20  and conspire and agree with Paris Wells, Markita Choice, and

21  others known and unknown to the grand jury to distribute one

22  kilogram or more of a mixture containing a detectable

23  substance of heroin?  Do you understand that?

24         DEFENDANT GREEN:  Yes, sir.

25         THE COURT:  And do you understand that that carries

1     a penalty provision of not less than ten years or greater than

2     life imprisonment and not more than a $10,000 fine?

3                    DEFENDANT GREEN:  Yes, sir.

4                    MR. COURTADE:  Excuse me, Your Honor.  It's a $10

5     million fine.

6                    THE COURT:  $10 million fine, I'm sorry.  $10

7     million fine.  Do you understand that?

8                    DEFENDANT GREEN:  Yes.

9                    THE COURT:  And at least five years and up to life

10    on supervised release.  Do you understand that?

11                   DEFENDANT GREEN:  Yes, sir.

12                   THE COURT:  That is, at least ten years of prison

13    would be required if this Court accepts that plea.

14                   DEFENDANT GREEN:  Yes, sir.

15                   THE COURT:  Do you have any questions about that?

16                   DEFENDANT GREEN:  No, sir.

17                   THE COURT:  Followed by at least five years and up

18    to life of supervised release.

19                   Do you understand as to the next charge, possession

20    in Count 3 with intent to distribute heroin, that the

21    government is charging and you are apparently indicating that

22    you wish to plead guilty to a February 12th, 2013 date on

23    which it is indicated that you did knowingly, intentionally

24    possess with intent to distribute 100 grams or more of a

25    mixture containing heroin?

1          DEFENDANT GREEN:  Yes, sir.

2          THE COURT:  Do you understand that that carries a

3   penalty of not less than five years' or more than 40 years'

4   imprisonment and up to a $5 million fine with at least four

5   years and up to life on supervised release?

6          DEFENDANT GREEN:  Yes, sir.

7          THE COURT:  Any questions about that charge?

8          DEFENDANT GREEN:  No, sir.

9          THE COURT:  Or about those penalty provisions?

10         DEFENDANT GREEN:  No, sir.

11         THE COURT:  I'm going to somewhat combine counts --

12  well, let me -- I might as well take them one at a time.

13         Count 4 alleges that you did on that same date of

14  February 12, 2013, have -- you were a person who had been

15  convicted of at least three serious drug offenses punishable

16  by imprisonment for a term of one year or more under the laws

17  of the state of Michigan, and it alleges that you did possess

18  at least one firearm affecting commerce, being an H & R .22

19  caliber pistol, serial number 5304D, and/or a Colt .22 caliber

20  pistol, serial number AE14400.  That is, it alleges that you

21  did possess a firearm on that day -- two firearms here, and/or

22  two firearms, and that at that time you stood as a person

23  convicted of three serious drug offenses.  Do you understand

24  that?

25         DEFENDANT GREEN:  Yes, sir.

1          THE COURT:  And as to Count 5, it alleges on May

2     29th, 2013, just a few months later, that you, being a person

3     who had been convicted of at least three serious drug offenses

4     punishable by up to one year or more of imprisonment under the

5     laws of the state of Michigan, did knowingly possess one

6     firearm in and affecting commerce, being a Colt CFW 32-40 --

7     32-20 caliber revolver, serial number 471787.  Do you

8     understand that?

9          DEFENDANT GREEN:  Yes, sir.

10          THE COURT:  So we're talking about two dates for the

11     possession of firearms, February 12th of this year and May

12     29th here in Kent County, in both of which it charges that you

13     were a career criminal, having had at least three serious drug

14     offenses prior to your possession of these firearms.  Do you

15     have any questions about these charges of conspiracy to

16     distribute heroin, delivery of heroin, and possession of

17     pistols and revolvers on February 12 and May 29th?

18          DEFENDANT GREEN:  No, sir.

19          THE COURT:  No questions?  Do you understand that

20     this matter has these minimum penalty provisions under Count 4

21     and 5 of not less than 15 years and up to life imprisonment

22     and not more than a $250,000 fine as a sentence in this matter

23     with supervised release of at least five -- of up to five

24     years on Count 4 and Count 5?

25          DEFENDANT GREEN:  Yes, sir.

1              THE COURT:  Let me see if I can summarize this so we

2     understand this.  Count 1 is at least ten years in prison.

3     Count 3 is at least five years in prison and no more than 40

4     years.  And Count 4 and -- Count 3.  Counts 4 and 5 is not

5     less than 15 years and up to life imprisonment.  Do you

6     understand that?

7              DEFENDANT GREEN:  Yes, sir.

8              THE COURT:  So you've got two with a maximum -- all

9     of them have a maximum of up to life in prison, but at least

10    five and ten and 15 years on those?

11             DEFENDANT GREEN:  Yes, sir.

12             THE COURT:  Any questions about those?

13             DEFENDANT GREEN:  No, sir.

14             THE COURT:  Do you understand that in addition to

15    these minimum and maximum sentencing provisions, this Court is

16    required to consider certain applicable sentence guidelines

17    and may consider possible departures and other factors under

18    the sentencing statute as part of its obligation to impose a

19    sentence if it accepts your guilty plea?

20             DEFENDANT GREEN:  Yes, sir.

21             THE COURT:  Do you understand the government is

22    requesting forfeiture of certain firearms pursuant to the use

23    of those firearms in drug trafficking?

24             DEFENDANT GREEN:  Yes, sir.

25             THE COURT:  Has anyone threatened you or coerced you

1    to get you to plead guilty?

2                  DEFENDANT GREEN:  No, sir.

3                  THE COURT:  Has anyone made any promises of leniency

4    or told you they know what the sentence is going to be other

5    than these minimum sentences of five, ten, and 15 years that

6    attach to these various charges?

7                  DEFENDANT GREEN:  No, sir.

8                  THE COURT:  Is your plea undertaken after having had

9    an opportunity to reflect upon this and is it taken freely and

10   voluntarily?

11                 DEFENDANT GREEN:  Yes, sir.

12                 THE COURT:  Is there any question about these

13   charges or the plea that I could answer for you at this time?

14                 DEFENDANT GREEN:  No, sir.

15                 THE COURT:  Let's go back to Count 1.  Tell me about

16   this conspiracy to distribute heroin from 2011 to 2013.

17                 DEFENDANT GREEN:  Count 1 is I was traveling back

18   and forth to Grand Rapids.

19                 THE COURT:  From where?

20                 DEFENDANT GREEN:  Detroit, to obtain heroin to bring

21   it back to sell in Grand Rapids.

22                 THE COURT:  Did you have a source in Detroit?

23                 DEFENDANT GREEN:  Yes, sir.

24                 THE COURT:  You went to Detroit and did you

25   physically take possession of the heroin and come back with it

1    to Grand Rapids for purposes of resale?

2            DEFENDANT GREEN:  Yes, sir.

3            THE COURT:  Did you have what I would call customers

4    or persons who were readily buying it?

5            DEFENDANT GREEN:  Yes, sir.

6            THE COURT:  How frequently did you travel between

7    Detroit and Grand Rapids during this period of time?  How

8    often?

9            DEFENDANT GREEN:  I would say -- honestly I would

10   say about once a week.

11           THE COURT:  Did you have any other employment?

12           DEFENDANT GREEN:  At this time, no.  I mean, at

13   first I did.  I was working for 61st District in Habitat for

14   Humanity at first, but then I got laid off, and at the same --

15   then I started back selling drugs 'cause I was selling before.

16           THE COURT:  Was this made with other -- did you have

17   other people assisting you or helping you?

18           DEFENDANT GREEN:  Yes, sir.

19           THE COURT:  Who were they?

20           DEFENDANT GREEN:  A guy named Jeremy, Jeremy

21   Tolliver, and I was buying it from Paris Wells, Paris Wells

22   and a few other guys out of Detroit.

23           THE COURT:  Paris Wells out of Detroit?

24           DEFENDANT GREEN:  Yes.  Yes, sir.

25           THE COURT:  Was it fronted to you or did you pay

1    cash for it?

2            DEFENDANT GREEN:  At first I was paying cash, but

3    honestly it was so bad that I ended up having to start to get

4    fronted because it was so weak.  I was -- it was -- I ended up

5    started getting fronted, but at first I started buying.  I was

6    buying at first, but it was -- I wasn't making no money no

7    more because I had changed it.  I wasn't dealing with Paris

8    Wells at first.  I was dealing with someone else, and I went

9    to Paris Wells because I knew him and I knew I'd get a better

10   deal, and it just -- the drugs I got from him was so weak that

11   I ended up becoming in debt to him.  At the time that I got

12   arrested I had owed him $7,000.

13           THE COURT:  Because your customers didn't like the

14   weak stuff?

15           DEFENDANT GREEN:  No, so I had to give out more.  I

16   had to give them -- give them more.  Then I had fronted to

17   them.

18           THE COURT:  Now, who is this Markita Choice?  Was

19   she part of this?

20           DEFENDANT GREEN:  Yes.  She's Paris's --

21           THE COURT:  Who is she?

22           DEFENDANT GREEN:  She's I guess Paris's girlfriend

23   or baby mother or whatever.

24           THE COURT:  Did she help him?

25           DEFENDANT GREEN:  Yeah, she would -- well, I

1   would -- just sometimes she would just come pick up the money

2   and leave and he'll bring the drugs back to me.  Then I'd

3   leave and go back to Grand Rapids.

4                THE COURT:  And when did this start?

5                DEFENDANT GREEN:  About January or February of 2011.

6                THE COURT:  And when was the last time?

7                DEFENDANT GREEN:  Somewhere in February of --

8   February of --

9                THE COURT:  This year, '13?

10               DEFENDANT GREEN:  Yeah, 2013, yeah, a few days

11   before I got arrested.

12               THE COURT:  Okay.  You knew this to be heroin or you

13   reasonably believed this to be heroin?

14               DEFENDANT GREEN:  Yeah.  I was hoping that it was

15   heroin, but --

16               THE COURT:  Did you --

17               DEFENDANT GREEN:  Yeah, I knew, I'm saying, but I'm

18   saying I was -- yeah, I knew it was heroin and I knew it, but

19   like I was saying, it had got weaker.  But yeah, it was

20   heroin.

21               THE COURT:  If you were to add up the amount of

22   heroin that you secured from Detroit and distributed in Grand

23   Rapids, add it all up, how much would the total amount be?

24               DEFENDANT GREEN:  Are you just talking about dealing

25   with Paris Wells?

1              THE COURT:  Whomever.

2              DEFENDANT GREEN:  I would say anywhere from -- I

3    think it's around one to three kilos, probably two.

4              THE COURT:  Probably two kilograms total?

5              DEFENDANT GREEN:  Yes, sir.

6              THE COURT:  And again, you came back to Grand Rapids

7    and Kent County for purposes of distribution of that?

8              DEFENDANT GREEN:  Yes, sir.

9              THE COURT:  Okay.  It alleges in Count 3 that you

10   did -- on February 12th, something happened here in Kent

11   County.  Tell us about that.

12             DEFENDANT GREEN:  Count 3?

13             THE COURT:  Count 3.

14             DEFENDANT GREEN:  Count 3, I got pulled -- the

15   police, DEA and sheriff came to my house and told me -- they

16   read me my Miranda rights and told me that they saying that I

17   was selling heroin, and I asked them -- I told them, No, I

18   didn't.  They said, Yes, you do.  I said, Tell me what you

19   know, then.  They said, We know that you've been selling and

20   we know that you got heroin on Lydia Street.  And so I told

21   them, I said, Yes, sir, I do.  I got about a hundred grams

22   over there, and I told them where it was at.  It was in a

23   kitchen cabinet.

24             THE COURT:  On Lydia Street in Grand Rapids?

25             DEFENDANT GREEN:  Yes, sir.

```
 1                    THE COURT:  Is that a house?

 2                    DEFENDANT GREEN:  Yes.

 3                    THE COURT:  What was your relationship to the

 4      house?

 5                    DEFENDANT GREEN:  Well, actually I was paying the

 6      rent there, but some other person that was with me, they was

 7      staying there, so I'd keep my stuff there.

 8                    THE COURT:  So you kept your stuff, meaning your

 9      drugs --

10                    DEFENDANT GREEN:  Yes, sir.

11                    THE COURT:  -- at Lydia Street?

12                    DEFENDANT GREEN:  Kept the heroin there.

13                    THE COURT:  You kept your heroin at Lydia Street?

14                    DEFENDANT GREEN:  Yes.

15                    THE COURT:  So you didn't have the heroin on the

16      street that you lived on?

17                    DEFENDANT GREEN:  No, sir.

18                    THE COURT:  Now, when the police raided -- did the

19      police come to your house with a search warrant?

20                    DEFENDANT GREEN:  Yes, they said they had one.  I

21      never seen it, but they said they had one.  I believe they had

22      one.

23                    THE COURT:  Did you give them permission to search

24      Lydia Street?

25                    DEFENDANT GREEN:  Yes, sir.
```

1              THE COURT:  Did they find anything on Lydia Street?

2              DEFENDANT GREEN:  Yes.  They found the heroin.  I

3    told them where it was at.

4              THE COURT:  How much heroin did they find?

5              DEFENDANT GREEN:  A hundred and -- a hundred -- I

6    think 102 grams or something.

7              THE COURT:  Of heroin?

8              DEFENDANT GREEN:  Yeah.

9              THE COURT:  You knew it was there?

10             DEFENDANT GREEN:  Yes, sir.  I put it there.

11             THE COURT:  Had you put it there?

12             DEFENDANT GREEN:  Yes, sir.

13             THE COURT:  And you understand that this charge

14   again has a minimum penalty provision of five years' and not

15   more than 40 years' imprisonment?

16             DEFENDANT GREEN:  Yes, sir.

17             THE COURT:  Let's turn to the felon in possession of

18   a firearm in Count 4.  They allege here that on February 12th

19   that you had in your possession some firearms.  Tell me about

20   that.

21             DEFENDANT GREEN:  Yes.  I had -- actually I bought

22   three -- these three guns that's in this Count 4 and 5, I

23   bought them at the same time from a person in Grand Rapids,

24   and I traded him.  I gave him heroin for 'em.  And I actually

25   told the agents at that time that it was three guns in there

1    and they only found two, so when they got me again, they found

2    the other one, but they'll tell you that I told them there was

3    three guns in there.  I bought 'em all at one time.  They

4    was -- one of them had bullets and I thought it was -- I

5    thought they was starter bullets, but I don't know 'cause I

6    never used guns before, but I had -- I had it.

7              THE COURT:  Well, why did you take them in trade?

8    Why did you have them?

9              DEFENDANT GREEN:  Because he --

10             THE COURT:  What were you doing with the guns?  I

11   mean, you said you took them in trade for drugs.

12             DEFENDANT GREEN:  Yeah, because he didn't have any

13   money, so I took the guns in trade.  I was -- honestly, I was

14   gonna sell 'em.

15             THE COURT:  Did you carry them?

16             DEFENDANT GREEN:  Did I carry?  I had them in the

17   house, sir.  He brung 'em to me and I never took them out of

18   the house before.

19             THE COURT:  You never carried them in your pocket?

20             DEFENDANT GREEN:  No, sir.

21             THE COURT:  After you got them?

22             DEFENDANT GREEN:  No, sir.

23             THE COURT:  Now, they contend here that one was a

24   Harrington & Richardson .22 caliber pistol and one was a Colt

25   .22 caliber pistol.  Is that right?

1           DEFENDANT GREEN:  Yes, sir.

2           THE COURT:  You looked them over enough to know what

3    they were?

4           DEFENDANT GREEN:  Yes, sir.

5           THE COURT:  A .22 is not a big caliber, so it was a

6    small gun, I presume?

7           DEFENDANT GREEN:  Yeah, that's true.

8           THE COURT:  One that would fit in your hand, that

9    kind of thing?

10          DEFENDANT GREEN:  Yeah.  One of them was this

11   big (indicating).  I just took 'em because I knew I could

12   probably sell 'em to somebody.  I didn't want 'em.

13          THE COURT:  Now, it says here that you have three

14   previous drug convictions.  Is that right?

15          DEFENDANT GREEN:  Yes, sir, at least.

16          THE COURT:  Tell me when were they and what were

17   they for?

18          DEFENDANT GREEN:  Most of 'em was for cocaine, Your

19   Honor, but they say cocaine/heroin.  They said the same thing,

20   but I was selling cocaine at first and then I started selling

21   heroin.

22          THE COURT:  Tell me where were these convictions

23   obtained from, what county?

24          DEFENDANT GREEN:  Montgomery County in Ohio, Wayne

25   County in Detroit, and Kent County.

1          THE COURT:  Let me see.  I have something here.  I

2    have something here which is in the plea agreement that

3    alleges that the Montgomery County, Ohio, was 1991, aggravated

4    drug trafficking.  Is that right?

5          DEFENDANT GREEN:  Yes, sir.

6          THE COURT:  March 25th of 1991?

7          DEFENDANT GREEN:  Yes, sir.

8          THE COURT:  And they contend here that you have one

9    in the Recorders Court for the City of Detroit, delivery of

10   controlled substance, heroin/cocaine, in October of '92.  Is

11   that right?

12         DEFENDANT GREEN:  Yes, sir.

13         THE COURT:  That's you?

14         DEFENDANT GREEN:  Yes, sir.

15         THE COURT:  Then I see here in this record January

16   '05 of delivery of cocaine -- of controlled substance,

17   heroin/cocaine, in Kent County.  Is that right?

18         DEFENDANT GREEN:  Yes, sir.

19         THE COURT:  And in August of '07 again in Kent

20   County, Michigan, delivery of heroin/cocaine.  Is that right?

21         DEFENDANT GREEN:  Yes, sir.

22         THE COURT:  And then there's something here about a

23   September of '07 manufacture of marijuana.  Is that you?

24         DEFENDANT GREEN:  Well, to be honest, sir, I'm

25   saying no.  I'm saying no because I don't -- I don't think

1     that's true, that one right there.  The rest of 'em are.

2              THE COURT:  Okay.  So that's a question mark, this

3     September of '07, okay.  But then -- because we have something

4     in August of '07, which is delivery of controlled substance,

5     cocaine, which you say you did?

6              DEFENDANT GREEN:  And that is true because I guess

7     what happened was in August, you know how you take a plea and

8     they throw the other ones out, and I think that's what

9     happened.  I never pled guilty to that and I don't remember

10    this, period.  I wasn't there for the marijuana.

11             THE COURT:  Okay.  Let's move along, then.  We'll

12    see if we can clear that up.  In September of '11 -- excuse

13    me, July of '11, it is delivery of heroin/cocaine.  Is that

14    you?

15             DEFENDANT GREEN:  Yes, sir.

16             THE COURT:  Mr. Courtade, do you have any response

17    as to this record in September of manufacture of marijuana?

18             MR. COURTADE:  Your Honor, that's reported in NCIC

19    and the Law Enforcement Information Network.  The defendant

20    says he thinks it was a package deal to dismiss those.  The

21    computer doesn't say that, but we'll have to look at the

22    actual records from Kent County, and I've not done that, Your

23    Honor.  We left it in there in an abundance of caution, but if

24    the Court wishes to strike it out, I don't know that it

25    matters for the sentencing, at least as for the charge.  But

1      it will matter to the Court at sentencing, I know, when it

2      looks at the presentence report.

3              THE COURT:  Well, the charge is at least three

4      serious drug offenses, and I think we have --

5              MR. COURTADE:  We have five.

6              THE COURT:  Five.  We have a Montgomery, Ohio; we

7      have a Wayne County; we have three others here in Kent

8      County.

9              MR. COURTADE:  Correct.  So this would be a sixth

10     and I think it would be surplusage if it were true, and if

11     it's not true, then it will certainly come out in the

12     presentence report.

13             THE COURT:  Okay.  Your motion to strike is granted.

14             MR. COURTADE:  Thank you.

15             THE COURT:  Now, it further contends in Count 5 that

16     on May 29th of '13, that you, being a person who had at least

17     three serious drug offenses punishable by imprisonment for a

18     term exceeding one year, did knowingly possess one firearm

19     affecting commerce, being a Colt CFW 32-20 caliber revolver.

20     Have I got that correct?

21             DEFENDANT GREEN:  Yes, sir.

22             THE COURT:  That's just about five months ago, four

23     months ago.  What happened here in Kent County?

24             DEFENDANT GREEN:  Like I said, Your Honor, when they

25     arrested me the first time, I was being honest with the

1    officers and I told them that I had three guns, and they only

2    found two.   I thought I told them where all of them was at.

3    Obviously they didn't find them.   And then when they came

4    back, they found it, and I still didn't know where the gun was

5    at because I thought that they had it.   So they came and

6    searched the house twice.   They found two guns, but I told

7    them when they came there was three guns there and all three

8    were mine, and this was the third gun that they just found.

9         THE COURT:  So they found all three of them in the

10   same house?

11        DEFENDANT GREEN:  Yeah.

12        THE COURT:  And which house was that in?

13        DEFENDANT GREEN:  When they -- on Burton.

14        THE COURT:  So the guns were on Burton.  The guns

15   had never been on Lydia?

16        DEFENDANT GREEN:  Never.

17        THE COURT:  Okay.  But you -- and it's your position

18   that the H & R -- it's your position, I'm sorry, that the Colt

19   CFW 32-20 caliber revolver was in fact one of the three?

20        DEFENDANT GREEN:  Yes, sir.

21        THE COURT:  So that revolver and the Colt .22 pistol

22   and the H & R .22 pistol were the three that you contend you

23   took in exchange for drugs, heroin?

24        DEFENDANT GREEN:  Yes, sir.

25        THE COURT:  And that they were in your possession

1  and your ownership of them not only on February 12th, but on

2  May 29th.  Is that right?

3            DEFENDANT GREEN:  Yes, sir.

4            THE COURT:  And on both of them you had at least

5  three serious drug offenses at the time you had them in your

6  possession during which time you had been transacting the sale

7  of heroin that you bought from Detroit?

8            DEFENDANT GREEN:  Yes, sir.

9            THE COURT:  And do you understand that pursuant to

10  this matter, that not less than, under Counts 4 and 5, 15

11  years and up to life imprisonment may be the sentence -- would

12  be required to be the sentence which the Court imposed?

13            DEFENDANT GREEN:  Yes, sir.

14            THE COURT:  And as to Count 3, possession with

15  intent to distribute heroin, not less than five years nor more

16  than 40 years.  You understand that?

17            DEFENDANT GREEN:  Yes, sir.

18            THE COURT:  And on the conspiracy with those various

19  individuals to bring in heroin from Detroit to Grand Rapids

20  here in the Western District of Michigan, not less than ten,

21  which means ten and up to life in prison?

22            DEFENDANT GREEN:  Yes, sir.

23            THE COURT:  And when you have described Grand Rapids

24  or this Lydia and Burton, you're describing something that's

25  within the City of Grand Rapids and certainly within the

1    Western District of Michigan?

2            DEFENDANT GREEN:  Yes, sir.

3            THE COURT:  Okay.  Are there any additional

4    questions that should be asked or facts that should be

5    ascertained to establish the factual basis for these three

6    counts, Mr. Courtade?

7            MR. COURTADE:  Not for the factual basis.  And while

8    it pales in significance to everything else, you understand

9    that the government's going to ask you for $400 in special

10   assessments because you'll be convicted of four counts, four

11   felony counts?

12           DEFENDANT GREEN:  Yeah.

13           MR. COURTADE:  The special assessment wasn't

14   covered, Your Honor.

15           THE COURT:  Well, I think -- yes, I thought I did

16   cover that, the special assessment

17           MR. COURTADE:  I may have missed it, then.  I'm

18   sorry.  That was it.

19           THE COURT:  I think I have that, okay.

20           Mr. Karafa, you've kept careful notes there as I was

21   going through this.  Is there anything else that should be

22   asked to establish the factual basis of your client's guilt

23   pursuant to this plea agreement?

24           MR. KARAFA:  I believe not, Your Honor, thank you.

25           THE COURT:  The following are the findings of this

1   Court:  that this plea is freely and voluntarily entered

2   without promises of leniency or coercion.  The Court finds

3   that Counts 1, 3, 4 and 5 of the indictment appear to be

4   factually accurate in this matter, that the defendant is

5   actually guilty and hereby stands convicted of these matters,

6   and that this plea agreement is hereby accepted.

7           A presentence report will be ordered to be prepared,

8   and I have a sentencing date, Mr. Karafa, of first thing in

9   the afternoon on January 6th of 2014 at 1:15 in the morning if

10  you can work -- or in the afternoon if you can work this into

11  your schedule.

12          MR. KARAFA:  Very good, Your Honor.

13          THE COURT:  Okay.  January 6th, 1:15.  I see

14  Magistrate Judge Carmody has entered a detention order in this

15  matter and she has set forth the grounds.  I see no reason to

16  set that detention order aside, so Mr. Green may be remanded

17  to the custody of the marshal for safekeeping and be brought

18  back here for purposes of the sentencing in this matter.  A

19  presentence report will be prepared forthwith.

20          Thank you, Mr. Karafa.

21          MR. KARAFA:  Thank you, Your Honor.

22          THE COURT:  That's all in this matter.  Thank you.

23              (Proceedings concluded at 1:53 p.m.)

24

25

CERTIFICATE OF REPORTER


        I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

        I do further certify that the foregoing transcript was prepared by me.



/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503